The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRACY and BARBARA NEIGHBORS; ARUL MENEZES and LUCRETIA VANDERWENDE; LAKE SAMMAMISH 4257 LLC, HERBERT and ELYNNE MOORE; TED and ELAINE DAVIS; REID and TERESA BROWN; SHAWN and TRINA HUARTE; ANNETE MCNABB; EUGENE and ELIZABETH MOREL; VOLKER ELSTE and GAIL UREEL, <br><br> Plaintiffs, <br><br> vs. <br><br> KING COUNTY, a home rule charter county and THE CITY OF SAMMAMISH, an Incorporated Municipality, <br><br> Defendants. | No. 2:15-cv-00970 <br><br> DECLARATION OF GINA AULD |

I, Gina Auld, declare and state:

1. I am over the age of eighteen and qualified to testify regarding the contents of this declaration.

2. I am employed by King County Parks Division and I am currently the Capital Project

DECLARATION OF GINA AULD- Page 1
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

Manager for the East Lake Sammamish Trail ("ELST") Project. I have been involved in the ELST project since July of 2006. My duties and responsibilities include managing the environmental review and permitting processes as well as the design and construction of this project.

3. I am familiar with the history of this project, including the extensive opportunities for public comment that were provided during the environmental review (SEPA and NEPA) process

4. The East Lake Sammamish Trail project will provide an alternative non-motorized transportation corridor and multi-use recreational trail along the former Burlington Northern Sante Fe ("BNSF") corridor on the east side of Lake Sammamish. The trail will provide "access to recreation, employment, and retail centers in the cities of Redmond, Sammamish, and Issaquah and a link in the King County regional trail system." *Exhibit 1, NEPA/SEPA Final Environmental Impact Statement, East Lake Sammamish Master Plan Trail ("FEIS") at S-1.*

5. After purchasing the corridor in 1998, King County embarked on an extensive Master Planning process for the ELST in order to ensure adequate public comment, environmental review, policy development and planning. The County made the decision to allow interim use of the trail during the planning process in order to allow public use of the corridor before the permanent trail could be developed. *Exhibit 1, FEIS,* at S-9

6. During the environmental review and planning process, there were many opportunities for public comment and robust public participation. Over 175 individuals or agencies submitted comments. The final EIS was published in April of 2010 and a Record of Decision was issued in August of 2010.

7. During the environmental review process, the design called for construction of a trail

DECLARATION OF GINA AULD- Page 2
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

1  ranging in width from 18 to 27 feet, depending on location.. Since that time, King County has
2  narrowed the width of the trail to eighteen feet throughout the corridor. Plans for the ELST now
3  provide for twelve feet of pavement, with two feet of gravel on either side to accommodate
4  runners and walkers seeking a softer surface, and a one foot clearance on either side for a total
5  width of eighteen feet.

6      8. The ELST is designed at a width of 12 feet because that is the recommended width
7  for a multi-use trail of this type. The guidelines and standards for the design of multi-use trails
8  are set forth in the American Association for State Highways and Transportation Officials
9  ("AASHTO") Guide for the Development of Bicycle Facilities, 2012. These guidelines
10 recommend a twelve foot wide paved trail. Local and state governments constructing facilities
11 like the ELST are required to abide by these AASHTO design guidelines. As a project partially
12 funded with Federal Highway Administration ("FHA") funds, King County is required to
13 comply with the AASHTO design guidance per Local Agency Guidelines.

14     9. The entire length of the ELST corridor is eleven miles. King County has completed
15 several segments of the trail, namely those in Redmond and Issaquah, and a 2.4 segment in north
16 Sammamish.

17     10. There are two segments remaining to complete the ELST. For planning purposes,
18 these have been labelled as South Segment A, and South Segment B. South Segment A is a 1.2
19 mile segment and South Segment B is a 3.5 mile segment.

20     11. In late July of 2014, King County applied for a Shoreline Substantial Development
21 Permit ("SSDP") for South Segment A. Since that time, we have engaged in extensive public
22 comment and outreach to the community at large and to the adjacent property owners. This has
23 included a total of five community meetings on site, as well as additional one-on-one meetings.

DECLARATION OF GINA AULD- Page 3
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

1 In response to public comments from adjacent property owners, other members of the public, and
2 the city staff, the County has made significant modifications to its plans for this segment of the
3 trail. For example, the clearing and grading limits have been tightened in places, and the trail
4 alignment has been shifted in one area requiring the relocation of a ditch and the installation of a
5 concreted channel to replace the ditch.

6     12. 60% design document are required to before we submit an application for a
7 SSDP permit. We have not yet reached 60% design on South Segment B.

8     13. One of the funding sources for the South Segment A project is a Federal Highway
9 Administration (FHA) grant in the amount of $750,000. There are a series of administrative
10 deadlines associated with this grant that must be met in order to retain these funds. Because of
11 delays on this project to date, King County has already requested and was granted a six month
12 extension of these deadlines. The current deadline to "obligate" these funds is December 31,
13 2015. (The term "obligate" relates to the timing surrounding construction). The agencies
14 administering this grant have informed King County that no further delays will be
15 granted. Since obtaining a SSDP is one of the procedural/administrative steps that must be
16 completed prior to construction, any delay in issuance of the SSPD permit jeopardizes this
17 federal funding.

18     14. Any additional delay in issuing the SSPD permit will result in added costs to King
19 County. I have done some calculations of the costs related to a six month delay in issuance of
20 the permit and have prepared a rough estimate of the costs. My estimated costs that the County
21 would incur is $134,400 per month for a total cost of $804,000 for a six month delay. Given the
22 limited time I was given to prepare this estimate it is a rough estimate. This cost represents the
23 cost of salaries, consultant fees, office space and other hard costs related to this project.

DECLARATION OF GINA AULD- Page 4
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

15. I have reviewed the Complaint for Declaratory Relief, Injunctive Relief and Inverse Condemnation ("Complaint"), and the accompanying Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"). There are a number of inaccurate statements in these two documents.

16. First, at multiple points in these documents, the plaintiffs assert that construction of the ELST South Segment A is imminent. That is not correct. Before construction, the City must approve the SSPD permit, and the 21 days appeal period must run be complete this permit is final. In addition, the County must submit and obtain additional permits, namely a grading permit and a JARPA permit. After all of the permits are obtained and the appeal periods have been run, King County must comply with all applicable King County code provisions and state law regarding the advertising and opening of bids. This involves at a minimum advertising in a paper of general circulation the Invitation to Bid in order to solicit those seeking to submit bids. A project of this scale requires a 30 day bid evaluation and contract procurement period. Once a bid is opened, King County staff review the bid to determine if it meets the legal requirements for a responsive and responsible bid and to determine if adequate budget funds are available to complete the project. Next step is the processing of the award and execution of the contract. This processing can take a minimum of 2 weeks and generally occurs within one month. Once a contract is awarded, King County must schedule and hold a preconstruction conference which can take two weeks to schedule all the parties required to be in attendance. At this point the Notice to Proceed can be issued. Considering all of these requirements, the earliest we could proceed on this project is October of 2015.

17. King County has designed the trail with the intention of minimizing impacts to

DECLARATION OF GINA AULD- Page 5
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

adjacent homeowners. In fact, several of the criteria that King County adopted to guide design of the ELST relate to adjacent property owners. These criteria as follows:

- Avoid impacts on existing structure, building, or access road
- Avoid improvements beyond trail right of way
- Maintain safe sight distances
- Avoid/minimize fill into wetlands, streams
- Avoid significant trees
- Consider privacy/screening
- Consider turning movements
- Consider perceived equity
- Consider neighbor investments such as substantial retaining walls, docks and bridges, etc.

18. The TRO Motion asserts that construction of the permanent trail will result in harm to the adjacent property owners such as "destruction of parking areas, removal of landscaping, loss of privacy, loss of mature trees, and loss of access that has been in place for many years." All of these claims are false and are addressed below.

19. Loss of access: King County is preserving existing access to all of the adjacent properties. In fact, in order to insure adequate access and safety for adjacent homeowners the County's plans call for installation of stairs, gates, and railings serving these properties. Many homeowners have private driveways leading down to the ELST. The County is also improving many existing driveways and parking areas as part of this project.

20. Parking: Where possible King County is preserving existing parking along the trail

DECLARATION OF GINA AULD- Page 6
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

adjacent homeowners. In fact, several of the criteria that King County adopted to guide design of the ELST relate to adjacent property owners. These criteria as follows:

- Avoid impacts on existing structure, building, or access road
- Avoid improvements beyond trail right of way
- Maintain safe sight distances
- Avoid/minimize fill into wetlands, streams
- Avoid significant trees
- Consider privacy/screening
- Consider turning movements
- Consider perceived equity
- Consider neighbor investments such as substantial retaining walls, docks and bridges, etc.

18. The TRO Motion asserts that construction of the permanent trail will result in harm to the adjacent property owners such as "destruction of parking areas, removal of landscaping, loss of privacy, loss of mature trees, and loss of access that has been in place for many years." All of these claims are false and are addressed below.

19. Loss of access: King County is preserving existing access to all of the adjacent properties. In fact, in order to insure adequate access and safety for adjacent homeowners the County's plans call for installation of stairs, gates, and railings serving these properties. Many homeowners have private driveways leading down to the ELST. The County is also improving many existing driveways and parking areas as part of this project.

20. Parking: Where possible King County is preserving existing parking along the trail

DECLARATION OF GINA AULD- Page 6
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

corridor unless the parking impedes safety such as instances where they are parking in "sight distance triangles." For example, in South Segment A, while there may be temporary disruption of parking during construction, there will be no permanent loss of parking for adjacent homeowners.

21. Removal of Landscaping: As set forth in paragraph 17, one of the key principles guiding design of the ELST is to avoid significant trees, and consider privacy/screening wherever possible. While construction of the trail requires removal of vegetation and some significant trees, King County is retaining and installing vegetation wherever possible. One of the goals of this project is to ensure that the ELST has a park like feeling with plenty of vegetation. Areas disturbed by construction will be replanted with native trees and shrubs. To put this in context, in the just completed 2.4 mile north segment of the ELST, the County planted over 10,500 trees, shrubs and plants in order to ensure a park like setting and provide screening and privacy to adjacent homeowners. The cost of installing, establishing and maintaining these trees and shrubs will be approximately $750,000. The plans for South Segment A call for installing and planting over 11,500 trees shrubs and plants on a 1.2 mile segment at an approximate cost of $450,000.

22. Trees: As set forth in paragraph 17 above, one of the guiding principles of the design is to avoid significant trees. In South Segment A, the County is removing 29 significant trees. Originally, the County planned on removing 69 trees but after receiving comments from the public and the City of Sammamish, the County has reduced that number by approximately 60 percent to 29.

23. In addition to the general statements regarding the impacts of the trail construction,

DECLARATION OF GINA AULD- Page 7
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

the Complaint and TRO Motion also include specific allegations of harm from the plaintiffs. In reviewing the property records, only two of the properties are in South Segment A and the remaining properties are in South Segment B. Since the design has not yet been completed for South Segment B, it is too early to discuss specific impacts for this segment. The specific impacts relevant to segment A are addressed below.

24. Mr. Menezes and Ms. Vanderwende make numerous claims about impacts from the trail. I have reviewed this declaration and many of these claims are false (Exhibit E of the TRO Motion, Declaration of Arul Menezes and Lucretia Vanderwende).

25. Destruction of all trees: Paragraph 5 asserts that the plan "calls for the total destruction of all of the mature trees and construction of a 15 foot high wall topped by a 4 foot fence." This is incorrect. The plan calls for construction of an 11 foot wall and does include removal of mature trees in order to accommodate the retaining wall and the drainage vault. However, the County intends on replanting of approximately 14 shrubs on top of the retaining wall between the trail and the residence to provide screening.

26. Loss of parking: In paragraph 6, Mr. Menezes alleges that the location of the wall encroaches into his parking area and destroys it. That is also incorrect. Mr. Menezes parking area will be maintained. In addition, the new retaining wall will be in the same location and will provide the same amount of parking as the existing wood framed retaining wall and the adjacent rockery provide.

27. Drainage vault: In paragraphs 9, 10, and 11, Mr. Menezes refers to a drainage vault called for in the plans and states that this will cause flooding and other problems on his property. That is not correct. The vault is being installed in order to control the flow of water because the existing pipe on Mr. Menezes' property is too small to accommodate the expected flow.

DECLARATION OF GINA AULD- Page 8
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

28. The drainage vault will route water in its existing path as provided by the existing drainage system. King County is routing water in its existing path as provided by the existing drainage system. However, because the 4 inch pipe in the existing flow path is undersized, King County is proposing measures to address the deficiency. The County is proposing the vault to <u>reduce</u> peak flows and <u>minimize</u> the flooding potential that exists today. In fact, King County has no other alternatives and cannot direct or divert the drainage to another location because of the Sammamish Code cited. In sum, King County is collecting water at its existing location, as defined by existing contours and drainage patterns, controlling peak flows in the vault, and discharging at the same location as the existing pipe. Consequently, King County is not diverting drainage from its current natural pattern and is in fact reducing the peak flow of water in a manner that will allow the undersized private pipe to potentially function if properly maintained by the private owner.

29. In addition, the Declaration of Hebert and Elynne Moore also contain inaccuracies. *Exhibit F of the TRO Motion, Declaration of Herbert and Elynne Moore ("Moore Declaration")*. In paragraph 4, Moore asserts that the trail is being moved closer to their residence to accommodate a "drainage ditch." The area referred to is a wetland area not a "drainage ditch". This wetland was in the critical areas study submitted with the permit application. The consultant biologist delineated this wetland using methodology that complies with the applicable state and local regulatory requirements. The presence of this wetland was verified on multiple occasions, most recently in 2013/2014.

30. Moore also claims in paragraph 5 that "this construction will result in destruction of significant trees." This is not correct. The County's plans provide that the seven trees Moore is referring to will be preserved and monitored during construction. However, there is the

DECLARATION OF GINA AULD- Page 9
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

possibility that some of these trees will need to be removed during construction if they are damaged and become hazardous.

31. Finally, Moore states in paragraph 9 that "the removal of trees and shrubs" and the "plan to widen and pave the trail will increase flooding of our house and property." This is not correct. As stated in paragraph 18, the plans call for installation of over 11,500 trees, shrubs and plants in this 1.2 mile segment of the corridor. All areas disturbed by construction will be replanted with native trees and shrubs. In addition, there is no basis in fact for the claim that development of the permanent trail will "increase flooding." This project has code compliant drainage plan that will result in improved drainage along the trail corridor.

I declare under penalty of perjury of the law of the United States and the State of Washington that, to the best of my knowledge, the foregoing is true and correct.

Signed this 19th day of June, 2015 at Seattle, Washington.

_____
GINA AULD

DECLARATION OF GINA AULD- Page 10
No. 2:15-cv-00970

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

# EXHIBIT 1
# AULD DECLARATION

**EXHIBIT 1**



# east lake sammamish trail

April 2010

# NEPA/SEPA Final Environmental Impact Statement VOLUME I

## East Lake Sammamish Master Plan Trail

*Prepared for:*
Federal Highway Administration,
Washington State Department of Transportation, and
King County Facilities Management Division

 **U.S. Department of Transportation**
**Federal Highway Administration**

 **Washington State**
**Department of Transportation**

 **King County Department of Executive Services**
**Facilities Management Division**

# Summary

## Purpose and Contents of this Summary

The primary function of the East Lake Sammamish Trail environmental impact statement (EIS) is to help the lead agencies—the Federal Highway Administration (FHWA) and King County Department of Executive Services, Facilities Management Division (KCFMD)—make informed choices among reasonable alternatives for a ~~permanent~~ long-term East Lake Sammamish Master Plan Trail. This summary provides key information from the EIS, describing how the alternatives compare in terms of consistency with the project's purpose and need, and potential environmental impacts.

This summary begins with a description of the project, including the purpose and need for the East Lake Sammamish Trail. The major features of the trail and alternatives being considered are described. The impacts associated with each alternative are then compared, focusing on major impacts and differences among the alternatives. <u>These impacts are evaluated during the decision making process to select a preferred alternative.</u> Subsequent sections briefly discuss areas of controversy associated with the project and the permits that will be required to implement the project.

## Introduction to the Project

### Where is the project located?

The 11-mile trail would start at Gilman Boulevard in Issaquah and end near Bear Creek in Redmond (Figures S1-A (pg S-3), S1-B (pg S-4), and S1-C (pg S-5)).

### What is the purpose of the project?

The purpose of the proposed project is to design and construct an alternative non-motorized transportation corridor and a multi-use recreational trail along the former Burlington-Northern Santa Fe railroad corridor on the east side of Lake Sammamish. The trail would provide access to recreation, employment, and retail centers in the Cities of Redmond, Sammamish, and Issaquah and complete a link in the King County regional trails system. The trail is intended to safely accommodate a variety of user groups such as bicyclists, pedestrians, runners, wheelchair users (including those with motorized wheelchairs), in-line skaters, and equestrians, and different ages and skill levels within those groups.

### Why is the project needed?

The need for the project is driven by several factors including: (1) the regional need for alternative transportation corridors between major business centers, (2) the need for non-motorized recreational trails to support a growing population, and (3) the need to make connections among other existing and planned trails. Figures 3.7-1 (pg 3.7-3) and 3.7-2 (pg 3.7-4) illustrate existing and planned trails in the project vicinity. The trail would provide an option for commuters on local roadways and provide another link between business centers. The continuing increase in population has put pressure on existing recreational facilities in the area. A trail is needed that will accommodate the full range of potential trail users, such as walkers,

runners, wheelchair users, bicyclists, in-line skaters, and equestrians of all ages and skill levels. Links to existing and planned trails are possible along the 11-mile trail corridor.

## Who is leading the project?

The Federal Highway Administration (FHWA), the Washington State Department of Transportation (WSDOT), and King County Department of Executive Services, Facilities Management Division (KCFMD) are leading the project. As a County-proposed project with federal funding, the project must comply with both the State Environmental Policy Act (SEPA) and the National Environmental Policy Act (NEPA). KCFMD is the lead agency for SEPA. FHWA is the lead agency for NEPA.

## Who will decide where the trail will be located and what it will look like?

King County and FHWA will make the decision regarding trail alignment and configuration based on the Draft EIS evaluations of the alternatives, including cost considerations, and comments received on the Draft EIS. A This Final EIS will be prepared to provides the results of those evaluations and comments received. The final decision will be contained in the federal Record of Decision (ROD) issued by FHWA following the Final EIS.

## How did the rail corridor become available for use as a trail?

Railroads operated along this corridor from 1885 to 1996. In 1996, the Burlington-Northern/Sante Fe Railroad (BNSF) ceased 100 years of operations along this rail corridor. The Cascade Land Conservancy purchased the active railroad corridor from BNSF in April 1997. In 1997, King County and the Land Conservancy requested that the Surface Transportation Board (Board) grant interim trail use/railbanking status to this corridor. Railbanking allows the development of unused railroad corridors as recreational trails, such that the corridors are preserved for potential reestablishment of railroad use, should the need arise.

The application to railbank the corridor was approved in August 1998 and a federal "Notice of Interim Trail Use" was issued. The Land Conservancy sold the railbanked corridor to King County in September 1998. The County purchased the corridor with the intention of developing it into the East Lake Sammamish Trail. In December 2000, the King County Council approved construction of an Interim Use Trail along the railroad corridor.

## How is the corridor currently being used?

Portions of the corridor have been developed as the East Lake Sammamish Interim Use Trail. The Interim Use Trail is a 10.6-mile gravel trail, varying from 8 to 12 feet wide. The Interim Use Trail was constructed to allow public use of the railbanked trail corridor, protect natural resources and human safety, and fulfill railbanking requirements until the planning for a permanent trail could be completed and the permanent trail developed. Operation of the Interim Use Trail will expire in 2015; the trail would be decommissioned and closed to the public in 2015.

All permits necessary to construct the Interim Use Trail within the Cities of Redmond and Issaquah were obtained, and construction of the Interim Use Trail in these cities was completed in early 2004. Construction of the remaining segment of Interim Use Trail in the City of Sammamish began September 19, 2005, and was completed in March 2006. Constructed portions of the trail are open for pedestrian and bicycle use; equestrian use is not permitted on the Interim Use Trail. The term "corridor" is used to describe the former railroad right of way. The term "railbed" is used in instances where physical studies or analyses were conducted prior to the construction of the Interim Use Trail.



Figure S-2. Photo of Interim Use Trail

A representative photograph of the current use of the corridor is provided in Figure S-2 above.

## What are the major features of the proposed Master Plan Trail?

The project would develop the existing Interim Use Trail into a ~~permanent~~ long-term Master Plan Trail. The basic features of the Master Plan Trail include:

- For most Build Alternatives, the installation of ~~permanent~~ trail surfacing, including a combination of asphalt paving, soft surface shoulders for pedestrians (and equestrians in the Redmond segment only), and vegetated buffer;
- New accessible restroom facilities, with drinking fountains, at two locations along the trail corridor;
- New parking facilities, with accessible parking spaces, at three locations along the trail corridor;
- Traffic control measures (signage) where the trail crosses private driveways or roadways;
- A stormwater management system to control runoff from the trail and parking areas;